IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:19-cv-03109-DDD

JOHN MARK SEBASTIAN, SR.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

---

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

---

An Administrative Law Judge determined that Plaintiff John Mark Sebastian, Sr., is not entitled to benefits under the Social Security Act because he was not disabled and was, in fact, able to perform limited light work in the national economy. *See* 42 U.S.C. §§ 405(g). Mr. Sebastian challenged that decision in this court. (*See* Docs. 10, 13, 16, 17.) The ALJ's determinations were supported by substantial evidence. The decision is therefore **AFFIRMED**.

## LEGAL STANDARDS

### A. Entitlement to Disability Insurance Benefits

To obtain disability insurance benefits under the Social Security Act, a claimant must meet the insured status requirements, be younger than 65 years of age, file an application for a period of disability, and have a "disability" within the meaning of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir. 1991). The disability must

1

also have begun before expiration of the individual's disability-insured status as that term is defined by the Social Security Administration. 20 C.F.R. § 404.131; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983). A person has a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). To qualify for benefits, the disabling impairment must last—or be expected to last—at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Evaluating the existence of a disability is a five-step, sequential process that ends at any point at which the claimant is found not disabled. See 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. *Id.* at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th

Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). At this step, a reviewing ALJ must determine the claimant's residual functional capacity. *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

## B. Standard of Review by a District Court

When reviewing disability insurance benefits denials, district courts must decide whether "substantial evidence" supports the ALJ's factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). And courts may not substitute their judgment for that of the agency. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Any fact determined by the ALJ, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

3

## PROCEDURAL HISTORY

This case is an appeal of the Commissioner's denial of Mr. Sebastian's claim for Disability Insurance Benefits under the Social Security Act. Mr. Sebastian filed a claim for Benefits on December 3, 2016 (AR 15), alleging a disability onset date of August 19, 2012 (*Id.*) The hearing before the ALJ resulted in an unfavorable decision dated November 21, 2018. (AR 12–35.)

The ALJ found that Mr. Sebastian met the insured requirements and had not engaged in substantial gainful activity since August 19, 2012, the onset date of his alleged disability. The ALJ found the following severe impairments: lumbar stenosis/spondylosis, obesity, bipolar disorder with mania, and anxiety. The ALJ concluded that Mr. Sebastian didn't have an impairment or combination of impairments matching the severity of an established listing. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. According to the ALJ, Mr. Sebastian couldn't perform past relevant work, *see* 20 C.F.R. § 404.1565, but he had the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. § 1567(b). (AR 21.) Finally, the ALJ found that—considering Mr. Sebastian's age, education, work experience, and residual functional capacity—there are jobs that exist in significant numbers in the national economy that Mr. Sebastian can perform. *See* 20 C.F.R. §§ 404.1569, 404.1569a.

Mr. Sebastian appealed to the Appeals Council, which denied his request for review. (AR 1–3.) The Appeals Council's action is the final agency action. (*See* AR 1.)

## MEDICAL EVIDENCE AND OPINIONS BEFORE THE ALJ

Mr. Sebastian was hospitalized a few times in August and September 2012 for increased psychological symptoms. He improved each time and was discharged home with recommendations for outpatient mental health follow-up. (*See* AR 256–83, 298–316, 324–40, 348–72, 392–97.) A physical examination on August 21, 2012 showed that he walked normally and had a full, normal range of motion of his arms, legs, and spine. (AR 314–15.)

Primary care records from late 2012, 2013, and 2014 reflect that Mr. Sebastian's physical and mental conditions were improved or well-controlled on medications. (*See, e.g.*, AR 413–14, 418, 422, 426, 430–31, 433.) Examination findings were normal. (AR 413, 417, 421, 425, 429, 433–34, 436.) Mr. Sebastian told his doctor that he felt well emotionally and exercised daily. (AR 412–13, 427, 433.)

He then went to prison until February 2016 after committing a felony. (AR 782.) After getting out, on December 26, 2016, his progress notes reflect that he was "tired of taking all these pills" but acknowledged "he needs to take the pills in order to prevent future incidents of mania." The notes also state that he was "looking for a job, but having difficulty finding someone to hire him with a felony." (AR 785.) On January 17, 2017, he was still "looking for work." (AR 781.)

On January 27, 2017, Mr. Sebastian reported some muscle soreness after work shifts at a local newspaper, but he was able to deal with this by stretching before work. (AR 817.) He continued to exercise daily, and he did not report any back pain in primary care. (*See, e.g.*, AR 795–96, 803, 823.) March 24, 2017 imaging of his low back showed a "severely degenerated lower lumbar disc demonstrating large anterior osteophytes with smaller posterior osteophyte" and "disc herniation" (AR

5

901–02), but physical examination findings from about six months prior had been normal—showing a full range of motion. (*See* AR 824.)

At psychiatric medication management visits with Clare Arth, M.D., Mr. Sebastian largely described his moods in positive terms and exhibited pleasant, cooperative behavior; normal speech; normal thoughts; normal (euthymic) affect; and good insight, judgment, and impulse control. (AR 781, 803, 811, 817, 851. *But see* AR 830 (noting irritability).) The only work restriction documented in Dr. Arth's treatment notes was a recommendation that Mr. Sebastian work only day shifts and he "would be at increased risk for decreased sleep on the current work schedule of having both day and night shift work." (AR 829.)

In February 2017, State agency physician Glenn Gade, M.D., reviewed the evidence and opined that Mr. Sebastian's "physical impairments cause no functional impairments and are not severe." (*See* AR 74.) State agency psychologist Gayle Frommelt, Ph.D., also reviewed the evidence and noted that Mr. Sebastian

> suffers from bipolar disorder and has hx of DAA, which contributed to decompensations, hospitalizations and incarceration. Since becoming sober and taking meds, his condition has stabilized  and he has good mse and functional abilities. The claimant is capable of work of limited complexity but which requires accuracy and attention to detail; can respond appropriately to supervision and coworkers but must have minimal to no inter-action with the general public.

(AR 79.)

In May 2017, Dr. Arth opined that Mr. Sebastian was not limited with respect to short, simple instructions, and only slightly limited with respect to detailed instructions. (AR 885.) Dr. Arth submitted a "residual functional capacity evaluation (mental)" form, in which she opined that

6

Mr. Sebastian had moderate limitations in the following areas of mental functioning: his ability to maintain attention and concentration for extended periods, ability to get along with coworkers without distracting them or being distracted by them, ability to respond appropriately with the general public, ability to respond appropriately to changes in the work setting, and the ability to complete normal work weeks without interruption from psychological symptoms. (AR 885–86.) Dr. Arth also stated that Mr. Sebastian would be off task for ten-to-twenty percent of the workday and would likely miss less than one day per month due to his mental impairments. (AR 886.)

The ALJ also afforded Dr. Arth's opinion that Mr. Sebastian would be off-task ten-to-twenty percent of the time "very little weight," stating that "this finding is not supported by or consistent with claimant's mental health findings for any period other than late 2012." (AR 25.)[1] The ALJ recounted that "beginning in January 2013 claimant's mental health stabilized and he had consistent normal mental status examinations." (AR 25.)

Treatment records from mid-2017 through 2018 reflect that Mr. Sebastian was working as a highway-construction flagger and reported some back-pain. (AR 921 ("He worked 10hrs x6 days last week, in the sun."); *see also* AR 940, 950, 954, 979, 983, 989.) At mental status examinations with Dr. Arth, Mr. Sebastian continued to exhibit normal speech, thoughts, and affect, and good insight, judgment, and insight control. (AR 922, 940–41, 954, 979, 1006, 1024.) He described daily

---

[1]   Mr. Sebastian concedes that the "ALJ's explanation [regarding the amount of time he would be off-task] offers many reasons for that assignment of weight." (Doc. 13, at 10–11; *see also* Doc. 17, at 5–7 (containing no reply to the Commissioner's argument that Mr. Sebastian has conceded this point).)

activities that included exercising, going to the public library, smoking cigars at the park, attending Alcoholics Anonymous four to five times per week, and spending time with his best friend. (AR 926, 932, 1006.)

On April 25, 2017, he told a provider he was "still having episodes of considerable pain." (*See, e.g.*, AR 1010–11.) But records from July through November 2017 reflect that he demonstrated full range of motion and full strength. (*See, e.g.*, AR 952, 961, 976, 994.) Mr. Sebastian also did some physical therapy and saw an orthopedist, who recommended epidural steroid injections. (*See* AR 950, 974, 1008–09).

In April 2018, Mr. Sebastian saw William Zoesch, M.D., a single time for primary care. At that time, Dr. Zoesch noted a few lower back and gait abnormalities on examination. (AR 932–37.) Dr. Zoesch provided an opinion on Mr. Sebastian's physical functional abilities over the preceding fifteen months—during which time Mr. Sebastian had been working outdoors as a highway construction flagger. (*See, e.g.*, AR 921.) Dr. Zoesch described Mr. Sebastian as being in only "moderate" pain. (AR 935.) Dr. Zoesch filled out a treating physician statement indicating that Mr. Sebastian can lift or carry fifteen pounds, sit and stand for four hours each per day, occasionally stoop and squat, and never crawl or kneel. (AR 888–90; *see also* AR 26.) Dr. Zoesch also opined that Mr. Sebastian needed to be able to alternate between positions at will and walk for ten minutes at a time, every ten minutes. (AR 889.)

The ALJ gave Dr. Zoesch's opinion minimal weight, remarking that "the only clinical findings, observations and testing supporting these limitations were decreased range of motion, [and] claimant's reports of being uncomfortable and in constant pain" and that Dr. Zoesch "examined claimant on one occasion." (AR 26.) The ALJ also stated that "the longitudinal record presents minimal evidence in terms of treatment for

physical disorders, with the claimant himself indicating that he had been walking twenty-three to twenty-four miles per week without shortness of breath." (AR 26.) This "check-the-box" opinion from Dr. Zoesch, the ALJ concluded, should be discredited. (AR 26.)

## DISCUSSION

Mr. Sebastian argues that the ALJ erred by not having valid reasons for rejecting some of the restrictions provided by either Dr. Zoesch or Dr. Arth. He suggests that the ALJ's physical residual functional capacity determination does not have an evidentiary basis, and that the ALJ did not explain how the evidence supported the resulting restriction determination he made.

Mr. Sebastian's arguments concern the ALJ's determination of his residual functional capacity, which is an administrative finding, based on all the relevant medical and non-medical evidence, that an ALJ must make about the most a claimant can do despite his impairments. *See* 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3), 404.1546(c). The ALJ's determined here that Mr. Sebastian had

> the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. § 1567(b) meaning the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. The claimant [can] stand and/or walk four hours in an eight-hour day. The claimant can never climb ladders, ropes or scaffolds, but he can occasionally kneel, crouch, crawl, and climb ropes and stairs. The claimant could be off-task for up to five percent of the work-day. The claimant should not be involved in team or tandem work. The claimant should have no more than rare interaction with the general public with rare interaction being defined as no more than thirty minutes in an eight-hour day.

(AR 21.) Despite Mr. Sebastian's impairments, the medical record, as discussed above, reflects little evidence of physical or mental obstructions to his ability to work. The medical evidence, which documents provider visits throughout the period of alleged disability, consistently reflects physical and mental *ability*—all except the isolated opinion of Dr. Zoesche. And outside the medical record—in addition to working long hours in construction at times during the period of his claimed disability—Mr. Sebastian testified that although it is difficult for him to stand for an extended period, he has no problems with personal care, prepares his own meals, drives, shops for groceries and at thrift stores, cleans his apartment, does laundry, and can walk three miles before needing to stop. (AR 21–22.) He testified he can follow simple instructions and doesn't have a problem with authority figures. (AR 22.) The ALJ's determination that he can perform a reduced range of light work was based upon substantial medical and non-medical evidence.

Mr. Sebastian disagrees. He argues that the ALJ improperly challenged Dr. Zoesche on his observations of pain and diminished range of motion. (*See* AR 935 (noting "moderate pain [and] difficult positional changes").) He notes that "a comparison of Dr. Zoesch's restrictions to the ALJ's [residual functional capacity] shows that Dr. Zoesch got the standing and walking restriction exactly correct, was only off by five pounds on the lifting limitation, and was off by two hours on the sitting restriction." (Doc. 13, at 16.) He says the ALJ "did not explain how he knew . . . [Mr. Sebastian] could lift twenty pounds rather than fifteen, as Dr. Zoesch stated. Nor did the ALJ explain what evidence suggested

that . . . [Mr. Sebastian] could stand for four hours per day, but could sit for six rather than four as Dr. Zoesch stated." (*Id.*)[2]

Mr. Sebastian's position would essentially require an ALJ to explain every slight deviation from a claimant's preferred result with minute specificity. That is not the law. The "ALJ, not a physician, is charged with determining a claimant's [residual functional capacity] from the medical record. We [ ] reject [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ's determination must be supported by substantial, not determinative or exacting, evidence, and again, his determination here was adequately supported.

Mr. Sebastian's attack on the ALJ's treatment of Dr. Arth's opinion is even less sound. He says the "ALJ did not offer any reason for rejecting any of Dr. Arth's specific moderate mental limitations." (Doc. 13, at 20.) But the record doesn't reflect the ALJ did reject those limitations. Dr. Arth's moderate ratings indicated only "[s]ome impairment" not a "serious limitation[s]" or "substantial loss[es] in the ability to effectively function" (*see* AR 885 (comparing definition of "moderate" to "marked"),

---

[2]  Mr. Sebastian refers to Dr. Zoesch as his treating physician. But Dr. Zoesch doesn't qualify as a treating physician for the purposes of evaluating his opinion under agency regulations. Dr. Zoesch only saw Mr. Sebastian once. (AR 26.) This is not enough to warrant giving Dr. Zoesch's opinion any special consideration or controlling weight. *See* 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who . . . [has had] an ongoing treatment relationship with you."); *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (designation of "treating" physician "requires a relationship of both duration and frequency," and a doctor's opinion is "not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as h[is] treating source").

which the ALJ characterized as "several moderate limitations in the area of social interaction, and sustained concentration and persistence." (AR 25.) The ALJ accounted for these moderate difficulties by noting limitations in team or tandem work, interaction with the general public, that Mr. Sebastian could be off task up to five percent of the day. He also limited Mr. Sebastian to unskilled work, which is the simplest and least mentally demanding. These limitations are not apposite contrary to Dr. Arth's opinion, but consistent with them, and, more to the point, are based on substantial evidence in the record.

## CONCLUSION

The ALJ could have concluded differently but didn't. The ALJ's determination was based upon substantial evidence. Mr. Sebastian merely invites the Court to re-weigh the evidence, which is not its role in this case. The decision of the ALJ is therefore **AFFIRMED**.

DATED: July 9, 2020.                BY THE COURT:

_____

Daniel D. Domenico
United States District Judge